306 Ga. 706
FINAL COPY

S19A0795. JACKSON v. THE STATE.

PETERSON, Justice.

Kevin Durand Jackson appeals his convictions for malice murder and other crimes in connection with the shooting death of Timbaland Crowder.[1] Jackson argues that the evidence was insufficient to convict him, the trial court erred in denying his

[1] The crimes occurred on May 31, 2015. On June 15, 2015, a Carroll County grand jury indicted Jackson for malice murder, felony murder predicated on aggravated assault, aggravated assault, four counts of violating Georgia's Street Gang Terrorism and Prevention Act (the "Street Gang Act"), and two counts of possession of a firearm during the commission of a felony. Following a jury trial conducted November 30 through December 4, 2015, a jury found Jackson guilty of malice murder, aggravated assault, two counts of violating the Street Gang Act, and the firearms offenses; the jury did not return a verdict on the felony murder count and acquitted Jackson on the remaining Street Gang Act charges. The trial court sentenced Jackson on December 4, 2015, and then corrected the sentence on February 29, 2016, to impose a life sentence for malice murder, two concurrent five-year terms for the Street Gang Act violations, and two consecutive five-year terms for the firearms counts. The trial court merged the aggravated assault count for sentencing purposes. Jackson filed a motion for new trial on December 7, 2015. Jackson subsequently amended his motion for new trial following the corrected sentence. Following a hearing, the trial court denied Jackson's motion for new trial on December 6, 2018. Jackson filed a timely notice of appeal, and his case was docketed to this Court's April 2019 term and submitted for a decision on the briefs.

motion for a mistrial after a witness testified about Jackson's Facebook and other social media posts, and the trial court plainly erred in instructing the jury on the charged crimes. He also argues that he received ineffective assistance of counsel in several respects. We affirm because the evidence was sufficient to support Jackson's convictions, the trial court did not err in denying Jackson's mistrial motion, the jury instructions were not plain error, and trial counsel was not constitutionally ineffective.

Viewed in the light most favorable to the verdicts, the trial evidence showed that on the evening of May 30, 2015, a fight involving 15 to 20 people broke out at Lakeview Apartments in Carrollton. The fight ended, but another fight involving some of the same people started several hours later outside of a bar known as Cocoa's. The fight moved onto the street and led to additional skirmishes among the 75 to 100 people who were there. During this second fight, at least two witnesses saw a person known as "Wet," Jackson's street name, shoot Timbaland Crowder with a handgun. One of these witnesses, Travaurus Freeman, identified Jackson at

2

trial as the shooter. Another witness saw a person with Jackson's physical attributes walking down the street with a handgun after the witness heard gunshots.

Crowder died from a gunshot wound to the chest, and the bullet recovered from his body was a .380 metal-jacketed bullet that could have been fired from a semi-automatic handgun. At some point prior to the fighting on the street, Jackson and Crowder had argued.

Rashard Terry, a co-indictee who testified at Jackson's trial, said that he heard about the first fight and obtained a .380 semi-automatic handgun from his father because he wanted to protect his cousin, who thought people wanted to fight him. Terry went to the apartments and eventually to Cocoa's, where he saw people fighting. Terry encountered Jackson on the street and decided to enter the fray. Before doing so, he handed his handgun to Jackson. Soon after, Terry heard a gunshot and saw Crowder on the ground. Terry admitted to being a member of the Bloods gang and stated that Jackson was also affiliated with the gang. Terry also said that Crowder was a member of the Crips gang.

Investigator J. J. Cole of the Carrollton Police Department was qualified as an expert in gang investigations and testified that he monitored criminal street gangs in Carrollton. The Bloods street gang identified themselves with distinctive tattoos, hand signs, and the color red. Prior to investigating the murder in this case, Investigator Cole had been monitoring Jackson's social media activity and collecting information posted by Jackson. Pursuant to a search warrant, Investigator Cole extracted images from Jackson's Facebook account that showed: Jackson (with others) displaying Bloods hand signs; Jackson wearing all red clothing; and Jackson holding or possessing a handgun, including while another individual flashed a gang sign. Investigator Cole noted that the letter "C" had been replaced with the letter "B" in Jackson's Facebook posts (e.g., "Be Bool" and "Boolin' at da brib"), which Investigator Cole explained was due to the Bloods' refusal to recognize the letter "C," as they associated it with the Crips.

In one of Jackson's Facebook posts, there was an image of a hand holding a gun followed by an online discussion that occurred

4

on December 29 and 30, 2014. In that discussion thread, Jackson used Bloods terminology and also wrote comments such as: "Ima put it in a n***a life," "I pull dis mf out dey go do wat eva I say," "Ima kill me a n***a today." Investigator Cole explained that on the day the discussion thread started, there was a shooting toward an apartment; there were seven or eight people inside the apartment at the time, including an individual believed to be a Bloods member. Investigator Cole also stated that Crowder □ the victim in this case □ was the primary suspect of the apartment shooting. Based on his review, Investigator Cole opined that Jackson was a member of the Bloods.

1. *The evidence was sufficient to convict Jackson.*

Jackson argues that the evidence was insufficient to support his convictions for malice murder and violations of the Street Gang Act.[2] We disagree.

---

[2] Jackson challenges his convictions on the "murder counts" and the aggravated assault count. His challenges to the felony murder count and aggravated assault counts are moot, because he was not found guilty of felony murder and the trial court merged the aggravated assault charge for sentencing purposes. See *Lupoe v. State*, 284 Ga. 576, 577 (1) n.2 (669 SE2d

When evaluating the sufficiency of evidence, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). We do not resolve conflicts in the evidence or determine the credibility of witnesses; instead, we view the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted). The jury's resolution of these issues "adversely to the defendant does not render the evidence insufficient." *Graham v. State*, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) (citation and punctuation omitted).

(a)  *The evidence was sufficient to support the malice murder conviction.*

At trial, the State called several witnesses who saw Jackson at or near the scene of the crime at the time of the shooting. Two of the witnesses saw a man known as "Wet"□ Jackson's street name □

_____

133) (2008) (sufficiency challenges to counts that were merged or where no guilty verdict was entered are moot).

shoot the victim, and one of these witnesses specifically identified Jackson in court as the shooter. Jackson's co-indictee, Terry, said that he gave Jackson a .380 semi-automatic handgun just prior to the shooting, and the evidence showed that the victim died from a gunshot wound from a .380 bullet that was consistent with being fired from a semi-automatic handgun. Although Jackson cites conflicts in the evidence regarding the number of people at the fight, points to alibi witness testimony favorable to him, and challenges the reliability of witnesses who implicated him in the shooting, these issues were for the jury to resolve, and the fact that the jury resolved the conflicts in the evidence or credibility of the witnesses adversely to Jackson does not render the evidence insufficient. See *Graham*, 301 Ga. at 677 (1). The evidence summarized above was sufficient to authorize the jury to find Jackson guilty beyond a reasonable doubt of malice murder.

(b) *The evidence was sufficient to support the Street Gang Act convictions.*

Jackson was convicted of two counts of violating the Street Gang Act by participating in criminal gang activity through the commission of murder and an aggravated assault of Crowder while "associated with the Bloods, a criminal street gang." See OCGA §§ 16-15-4 (a) ("It shall be unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of any offense enumerated in [paragraph (1) of Code Section 16-15-3"); 16-15-3 (1) (J) (enumerated offenses include any criminal offense that involves violence or the use of a weapon). To convict Jackson, the State had to prove beyond a reasonable doubt that Jackson was associated with the Bloods, the Bloods were a "criminal street gang," Jackson committed the predicate acts of murder and aggravated assault, and the commission of those offenses was intended to further the interests of the Bloods. See *McGruder v. State*, 303 Ga. 588, 591-592 (II) (814 SE2d 293) (2018); *Jones v. State*, 292 Ga. 656, 659 (1) (b) (740 SE2d 590) (2013). The State proved each of these elements at trial.

At trial, Terry, who admitted to being a member of the Bloods, testified that Jackson was also associated with that gang. The State introduced numerous images showing Jackson displaying Bloods hand signs and using Bloods slang, such as "Be Bool." See OCGA § 16-15-3 (3) (existence of a gang "may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics"). Investigator Cole testified that he had monitored the Bloods in Carrollton, the gang had at least three members there, and the gang had committed many violent crimes, including aggravated assault and murder. See OCGA § 16-15-3 (3) (defining a "criminal street gang" as "any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity").

Regarding the third element, the evidence discussed above in the sufficiency analysis authorized a finding that Jackson shot at and killed Crowder, establishing that he committed the predicate offenses of aggravated assault and murder. The evidence also

9

showed that Crowder was a member of a rival gang, the Crips, and was the primary suspect in shooting at a Bloods member; on the same day of that shooting, Jackson wrote on his Facebook page that he was going to "kill me a n***a today." From this evidence, the jury was authorized to conclude that Jackson shot and killed Crowder in retaliation for Crowder's having shot at a Bloods member. See *In the Interest of W. B.*, 342 Ga. App. 277, 282 (801 SE2d 595) (2017) ("Evidence showing that a crime was done in retaliation for some act or insult committed against the gang or its members will also serve to show that the crime furthered the gang's interests." (citations omitted)). Based on this evidence, the jury was authorized to find Jackson guilty of the two violations of the Street Gang Act.

2. *The trial court did not err in denying Jackson's motion for a mistrial.*

Jackson argues that the trial court erred in denying his motion for a mistrial after the State introduced into evidence images obtained from his Facebook page and Investigator Cole's testimony

regarding a discussion thread on Jackson's Facebook page. We disagree.

The decision of whether to deny a mistrial is within the discretion of the trial court. *Curry v. State*, 305 Ga. 73, 75 (2) (823 SE2d 758) (2019). We will not disturb the ruling on appeal "unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial." Id. (citation and punctuation omitted).

Jackson argues that the admission of evidence obtained from his Facebook page was highly prejudicial and improperly raised issues regarding his character in violation of OCGA § 24-4-404 (b) ("Rule 404 (b)"). But the Facebook evidence was not improper character evidence; rather, it showed Jackson's association with the Bloods and was, therefore, vital to the State's case regarding the Street Gang Act allegations and also relevant to show Jackson's motive for the murder. See *Anglin v. State*, 302 Ga. 333, 336-337 (3) (806 SE2d 573) (2017) (holding that evidence of gang membership was relevant to establish motive in a gang-related murder case, and that such evidence should not be excluded under OCGA § 24-4-403

11

because, although the inculpatory evidence was highly prejudicial, it was not unfairly so); *Lupoe v. State*, 300 Ga. 233, 245 (8) (794 SE2d 67) (2016) (concluding that evidence of defendant's participation in gang activities was directly relevant to an element of Street Gang Act counts and did not constitute improper character evidence).

Jackson also argues that the trial court should have granted a mistrial when Investigator Cole provided some context to a December 29 and 30, 2014, discussion thread on Jackson's Facebook page in which Jackson made comments such as "I pull dis mf out dey go do wat eva I say" and "Ima kill me a n***a today." After reading that thread, Investigator Cole was asked to explain the significance of that post, and he responded that he had been investigating a shooting at Lakeview Apartments around that time.

Jackson objected and moved for a mistrial on Rule 404 (b) grounds, arguing that Investigator Cole was suggesting that Jackson was involved in the December 2014 shooting, and that the State had not given pretrial notice of its intent to introduce the evidence. The trial court overruled the objection and implicitly

12

denied the motion for a mistrial. Upon further examination, Investigator Cole clarified that Crowder ☐ not Jackson ☐ was the primary suspect in the December 2014 shooting. Because Investigator Cole's testimony regarding the December 2014 shooting was not evidence of Jackson's other crimes, the court did not err in denying Jackson's motion for a mistrial on this basis.

3. *The challenged jury instructions did not constitute plain error.*

Jackson next argues that the trial court committed plain error in instructing the jury on the charged crimes of malice murder, aggravated assault, and violations of the Street Gang Act. We disagree.

Under plain error review, reversal of a conviction is authorized if the trial court's "instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Green v. State*, 291 Ga. 287, 294 (8) (728 SE2d 668) (2012) (citation and punctuation omitted). There

is no plain error, however, if a "defendant affirmatively waived the alleged error." *Woodard v. State*, 296 Ga. 803, 809 (3) (a) (771 SE2d 362) (2015) (citation and punctuation omitted). "In evaluating claims of instructional error, we examine the jury charge as a whole." Id. at 806-807 (2) (citation omitted).

(a)  *Aggravated assault charge*

Jackson argues that the trial court's instruction on aggravated assault ☐ that a person commits the offense when a person assaults another with a deadly weapon ☐ was incomplete because it did not include a definition of simple assault.[3] A charge on simple assault is not always required to complete the definition of aggravated assault. See *Cantera v. State*, 289 Ga. 583, 585-586 (2) (713 SE2d 826) (2011); *Sutton v. State*, 245 Ga. 192, 193 (2) (264 SE2d 184) (1980). It is required when intent is in question so that the jury can determine

---

[3] Although Jackson was not convicted of aggravated assault since that count merged with malice murder, we consider his claim because, as Jackson points out, the trial court used the instruction in charging the jury on possession of a firearm during the commission of a felony, which was not merged. See *Stephens v. State*, 303 Ga. 530, 532 (1) (813 SE2d 596) (2018) (challenges to counts that are not merged are not rendered moot).

14

whether the defendant attempted to commit a violent injury or performed an act that placed the victim in reasonable apprehension of immediately receiving a violent injury. See *Cantera*, 289 Ga. at 586 (2). But where, as here, the jury has "been properly instructed on general intent" (i.e., that the State is required to prove that the defendant intended to commit the charged act), and "there is no question regarding the perpetrator's intent in shooting the victim . . . , there is no need for the trial court to instruct the jury on simple assault in connection with its charge on aggravated assault." Id. (citation omitted). Jackson's claim therefore fails.

(b) *Street Gang Act charge*

Jackson also challenges the trial court's instruction regarding the Street Gang Act counts, claiming that it omitted essential elements of the offense. The trial court instructed the jury:

> [T]o support a conviction under the street gang terrorism and prevention act, the accused must be shown to have conducted or participated in criminal street gang activity through the commission of an actual criminal act. Mere association with the criminal street gang is not sufficient.

15

The trial court later provided a definition of "criminal street gang activity" as the "commission of any criminal offense . . . that involves violence, possession of a weapon or any use of a weapon by a confessed or proven gang member."

Jackson does not explain in his brief what essential elements he believes are missing, and there is no obvious omission apparent from the given instruction. Reading the trial court's charge as a whole, as we are required to do, the trial court's charge fairly covered the essential elements of the offense. The trial court instructed the jury that a person violates the Street Gang Act if he is proven to be a gang member and participates in criminal gang activity *through* a predicate act. See OCGA § 16-15-4 (a) ("It shall be unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity *through* the commission of any offense enumerated in paragraph (1) of Code Section 16-15-3." (emphasis added)); see also *Rodriguez v. State*, 284 Ga. 803, 807 (1) (671 SE2d 497) (2009) (holding that statute's use of "through" provides the required element of a "nexus between the act

16

and an intent to further street gang activity" (punctuation omitted)).

Therefore, Jackson has failed to establish plain error.

(c) *Malice murder charge*

In instructing the jury on malice murder, the trial court said:

> Whether malice is in the mind of the accused at the time or during the act or killing, and moves the accused to do it, such is *insufficient* to constitute homicide. To constitute, let me read that again. *What if* malice is in the mind of the accused at the time of the act or killing, and moves the accused to do it, such is sufficient to constitute the homicide as murder.

(Emphasis added.)

Jackson argues that the italicized language confused the jury and was harmful error. But prior to the trial court's unfortunate slip-of-the-tongue, it gave a lengthy charge explaining what constitutes malice and instructed that malice may be formed in a moment and instantly. Considering the charge as a whole, the italicized language would not have misled or confused the jury. See *Delacruz v. State*, 280 Ga. 392, 398 (5) (627 SE2d 579) (2006) (charge providing, "if you do not believe from the entire evidence that the defendant is guilty beyond a reasonable doubt, you may convict,"

17

was an inaccuracy that did not require reversal where court elsewhere charged that jury had a duty to acquit if it had reasonable doubt as to the defendant's guilt (emphasis omitted)); *Williams v. State*, 267 Ga. 771, 773 (2) (a) (482 SE2d 288) (1997) (no reversible error in charge that felony murder "does not" require criminal intent to commit underlying felony where charge as a whole instructed that intent is an essential element of every crime and must be proved beyond a reasonable doubt). Therefore, Jackson's claim of plain error fails.

4. *Trial counsel did not render ineffective assistance.*

Jackson argues that his trial counsel was ineffective in several ways. To prevail on any of his claims, Jackson must show both "that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." *Scott v. State*, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). Failure to meet one prong

18

of the *Strickland* test is fatal to an ineffectiveness claim. *Leanos v. State*, 303 Ga. 666, 669 (2) (814 SE2d 332) (2018).

To establish deficient performance, Jackson must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Mims v. State*, 304 Ga. 851, 855 (2) (823 SE2d 325) (2019) (citation and punctuation omitted). To demonstrate prejudice, Jackson must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation and punctuation omitted).

(a) *Trial counsel was not ineffective for failing to file a motion to suppress the evidence obtained from Jackson's Facebook account and cell phone.*

Jackson argues that trial counsel was ineffective for failing to file a motion to suppress evidence obtained from his Facebook page and cell phone, because the search warrant applications did not

establish probable cause to authorize issuance of the search warrants.[4] Jackson argues that probable cause was lacking because the search warrant affidavits were deficient as Investigator Cole failed to attest to the veracity or reliability of the witnesses who supplied information and failed to mention that he had interviewed Freeman at least twice before Freeman identified Jackson as the shooter. Trial counsel was not deficient.

"Whether to file pretrial motions and how to argue them are strategic decisions, and when reasonable in the context of the case, do not constitute error." *Stroud v. State*, 272 Ga. 76, 78 (526 SE2d 344) (2000). When a defendant claims that trial counsel was ineffective for failing to file a motion to suppress, he must make a "strong showing" that the evidence would have been suppressed had the motion been filed. *Burrell v. State*, 301 Ga. 21, 25 (2) (d) (799 SE2d 181) (2017). To make this showing, Jackson had to establish that the magistrate who issued the warrant did not have a

---

[4] Jackson also argues that trial counsel should have objected to the admissibility of the evidence at trial, but offers no additional grounds on which trial counsel should have challenged the evidence.

20

substantial basis for concluding that probable cause existed under the totality of the circumstances. See *Glenn v. State*, 302 Ga. 276, 281 (III) (806 SE2d 564) (2017). In making the "practical, common-sense decision" of whether a probability exists that evidence of a crime will be found in a particular place, the magistrate must consider the totality of the circumstances set forth in the affidavit, including a consideration of the "veracity" or "reliability" and the "basis of knowledge" of witnesses "supplying hearsay information." *Prince v. State*, 295 Ga. 788, 792 (2) (a) (764 SE2d 362) (2014); *Bryant v. State*, 288 Ga. 876, 893 (13) (a) (708 SE2d 362) (2011). The probable cause test requires only a fair probability □ "less than a certainty but more than a mere suspicion or possibility" □ which by "no means" is "to be equated with proof by even so much as a preponderance of the evidence." *Glenn*, 302 Ga. at 281-282 (III) (citation and punctuation omitted).

Trial counsel testified at the motion for new trial hearing that he elected not to file a motion to suppress because it would not have

had merit given the totality of the circumstances. Trial counsel's assessment was reasonable.

Investigator Cole's warrant applications were based on information gathered in the investigation, including from police interviews of witnesses at the scene of the shooting, and evidence collected at the crime scene and during the autopsy of the victim. Investigator Cole stated that his investigation revealed that the shooting arose from a dispute between the Crips and the Bloods, Jackson was believed to be member of the Bloods, Jackson was with Terry near the shooting, Terry's father gave him a .380 semi-automatic handgun on the night of the shooting, the bullet removed from the victim was either a 9mm or .380 bullet, a .380 shell casing was found on the street, and Jackson lied about his presence at the shooting when interviewed. Freeman was the only individual listed in the affidavits who specifically identified Jackson as the shooter.

Jackson first complains that the affidavits contained a material omission for failing to note that Freeman did not identify Jackson as the shooter in two prior interviews with Investigator

Cole. Jackson relies on Investigator Cole's written summary of his interviews of Freeman, but he ignores Investigator Cole's notation that Freeman was "reluctant" and "most likely afraid to say too much" at first about what he saw and that Freeman reported at the third interview that he had not been truthful because he was "scared and heard the guys that shot were after him."

When an affidavit contains material omissions, the affidavit must be reexamined with the omitted truthful material to determine if probable cause still existed to issue the warrant. *State v. Palmer*, 285 Ga. 75, 78 (673 SE2d 237) (2009). Jackson selectively refers to Freeman's alleged lack of candor during prior interviews, but ignores the evidence that Freeman claimed that he did not reveal everything only because he was scared. Including all of this information in the affidavits would not undermine the probable cause determination. Nothing in the omitted material detracted from the other interviews that established that, during the shooting, Jackson was present with Terry, who had a gun consistent with the murder weapon. See id. ("If any omissions on the part of the officer

23

are offset by independent corroboration of criminal activity, then the magistrate may still have sufficient information to find that probable cause exists.") (citation and punctuation omitted).

And although Jackson complains that Investigator Cole did not specifically attest to the veracity of the "informants," the material information was not unreliable. The evidence implicating Terry in the crime came from Terry himself, who admitted to being a member of the Bloods and to being present during the shooting, and from Terry's father and his father's friend, who largely corroborated each other about Terry's possession of the firearm that was consistent with the murder weapon. Investigator Cole also interviewed another Bloods member who admitted to being involved in a fight on the night of the shooting and said that Jackson was part of the Bloods. And contrary to Jackson's assertion, the affidavits did establish a connection between his gang membership and the crime, given that the affidavits noted that witnesses said the shooting was gang related and that Jackson was in a gang.

Because the information contained in and omitted from the affidavits established probable cause, trial counsel was not ineffective for failing to file a motion to suppress based on allegedly deficient affidavits.

(b) *Trial counsel was not ineffective in his treatment of the trial court's jury instructions.*

Jackson argues that trial counsel was ineffective for failing to object to the trial court's incomplete instruction on aggravated assault, which affected the felony murder and firearms possession counts. Jackson notes trial counsel's testimony at the motion for new trial hearing that trial counsel probably should have requested an instruction on simple assault. But as we explained above, there was no need for a jury instruction on simple assault when, as here, there is no question that the injuries were intentionally inflicted by shooting the victim. See *Cantera*, 289 Ga. at 586 (2). Trial counsel was not deficient for failing to object to the aggravated assault instruction. See *Faust v. State*, 302 Ga. 211, 218-219 (4) (b) (805

25

SE2d 826) (2017) (the failure to make a meritless objection cannot support a claim of ineffective assistance).

Jackson also faults trial counsel for not requesting a pattern jury charge on a Street Gang Act violation. At the motion for new trial hearing, trial counsel stated that the charge he requested was accurate; although he typically asks for the pattern charge, he oftentimes requests charges tailored to the facts of the case; and, in Jackson's case, he decided not to request the pattern jury charge. Jackson did not ask trial counsel why he elected not to request the pattern charge, and there is no evidence that the requested charge was improper. "[I]n the absence of evidence to the contrary, counsel's decisions on jury charges are presumed to be strategic." *Walker v. State*, 301 Ga. 482, 490 (4) (b) (801 SE2d 804) (2017) (citations omitted).

(c) *Trial counsel was not ineffective for failing to request a limiting instruction on gang evidence.*

Jackson argues that trial counsel was ineffective for failing to ask for an instruction to limit the jury's consideration of the gang

evidence to the Street Gang Act counts. Trial counsel testified that he did not request a limiting instruction because, among other things, he did not want to draw further attention to that evidence, and he wanted to focus on the more serious charges that were not supported by the same strength of evidence as the Street Gang Act counts. Trial counsel's choice was reasonable. See, e.g., *Brewer v. State*, 301 Ga. 819, 821 (3) (804 SE2d 410) (2017) (declining curative instruction in order to avoid further attention to defendant's criminal history was reasonable trial strategy); *Phillips v. State*, 285 Ga. 213, 220 (5) (c) (675 SE2d 1) (2009) (reasonable trial strategy to avoid drawing further attention to defendant's prior convictions by declining limiting instruction on impeachment evidence). Jackson's ineffectiveness claim on this ground also fails.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 3, 2019.
Murder. Carroll Superior Court. Before Judge Blackmon.
*David D. Marshall*, for appellant.
*John H. Cranford, Jr., District Attorney, Christopher R. Keegan, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General,*

*Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.