317 Ga. 95
FINAL COPY

S23A0595. JACKSON v. THE STATE.

LaGrua, Justice.

Appellant Quentin Jackson was convicted of malice murder

and related charges in connection with the shooting death of Darian

Brewster.[1] On appeal, Jackson contends that (1) the evidence was

---

[1] The crimes occurred on August 20, 2016. On May 2, 2017, a Bibb County grand jury indicted Jackson and Benjamin Murphy for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault (Count 4), and possession of a firearm during the commission of a felony (Count 5). Jackson was also separately indicted for an additional count of felony murder predicated on possession of a firearm by a convicted felon (Count 3), possession of a firearm by a convicted felon (Count 6), and two counts of violating the Georgia Street Gang Terrorism and Prevention Act (Counts 7 and 8).

Jackson was tried alone in August 2018, and the jury found him guilty on all counts. The trial court merged the felony murder counts (Counts 2 and 3), the aggravated assault count (Count 4), and the possession of a firearm by a convicted felon count (Count 6) into the malice murder count (Count 1). Although the trial court merged Counts 2 and 3 into Count 1, they were actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-373 (5) (434 SE2d 479) (1993). The trial court also merged Count 6 into Count 1. The State has not challenged the sentences, and we decline to exercise our discretion to address them. See *Dixon v. State*, 302 Ga. 691, 696-698 (4) (808 SE2d 696) (2017).

The trial court sentenced Jackson to serve life in prison without the possibility of parole on Count 1, plus five consecutive years to serve on Count 5, 20 consecutive years to serve on Count 7, and 20 consecutive years to serve on Count 8. Jackson filed a timely motion for new trial, which was amended

insufficient, (2) his trial counsel provided constitutionally ineffective assistance in several respects, and (3) the trial court erred by failing to instruct the jury on accomplice corroboration. For the reasons that follow, these claims fail, and we affirm Jackson's convictions.

*Background.* The evidence at trial showed that in the early morning hours of August 20, 2016, Brewster was shot while sitting in a car with two friends, Sandra Thomas Russell and Marilyn Odom, in the parking lot of a nightclub in Bibb County. Russell and Odom drove Brewster to a nearby hospital, where he died due to a gunshot wound to his heart.

At the hospital, Russell and Odom told Investigator David Patterson that they had been at the nightclub with Brewster and Caryn Powell. The four of them left the nightclub and walked to Brewster's car, although Powell lagged behind. Russell told Investigator Patterson that she noticed "three guys with blankets

through new counsel. After holding an evidentiary hearing, the trial court denied the motion for new trial on December 7, 2022. Jackson filed a timely notice of appeal, and his case was docketed to this Court's April 2023 term and submitted for a decision on the briefs.

2

over their heads" while they were walking to Brewster's car and that an unknown man asked Brewster for a "light" after Brewster sat down in the driver's seat. Russell heard a "pop" and realized that Brewster had been shot. Odom told Investigator Patterson that she saw the man who shot Brewster, but she did not know his name.

Later that evening, Odom reached out to Investigator Patterson again and told him that: (1) Jackson was the person she saw shoot Brewster; (2) Jackson was living with his mother on Lynmore Avenue; and (3) on the night of shooting, Jackson was driving a champagne-colored Toyota SUV with a temporary car tag. The next morning, Investigator Patterson located a champagne-colored Toyota SUV with a temporary car tag parked at Jackson's mother's house.

Pursuant to a search warrant, Investigator Patterson obtained Jackson's phone records, which revealed a couple of calls to Christopher Finnell in the hours prior to the murder. Finnell told Investigator Patterson that Jackson and Murphy stopped by Finnell's house before the murder, and Jackson asked Finnell if he

wanted to participate in a robbery; Finnell declined. Finnell stated that the day after the murder, Murphy told Finnell that Jackson "had to burn the [man]," which Finnell understood to mean "shoot." Several hours later, Jackson stopped by Finnell's house, stating, "You better not run your mouth."

At trial, Odom testified that, on the evening of August 19, 2016 — the evening before Brewster was shot — Jackson picked her up and dropped her off to meet up with Russell and Powell to "party." Eventually, the three women also met up with Brewster, a known drug dealer who always carried cash and was generous with his money. The three women and Brewster then went to the nightclub.

Odom's testimony and the nightclub's surveillance video, which was played for the jury, showed Odom, Brewster, Powell, and Russell enter the nightclub at 1:22 a.m. on August 20. At 1:34 a.m., Russell left the nightclub when she received a phone call, and she was seen holding her phone up to her ear as she was leaving. At 1:38 a.m., Brewster, Powell, and Odom left the nightclub.

After leaving the nightclub, Powell saw Murphy in the parking

4

lot and stopped to talk to him. Powell and Murphy both testified that they had a brief chat and that Murphy was wearing rubber boots.

Odom and Russell testified that they walked with Brewster to his car. Odom noticed Jackson's champagne-colored Toyota SUV and saw Jackson on the side of the building "acting like he was using the bathroom." Jackson said to the group, "[H]ey, how y'all doing," and Brewster responded, "I'm good." Brewster, Russell, and Odom walked to Brewster's car, got in, and waited for Powell. Odom testified that, while they were sitting in Brewster's car, Jackson walked up to the driver-side door and asked Brewster for a lighter. In contrast, Russell testified that, before they got into the car, an unknown person asked Brewster for a cigarette and this person was part of a group of two or three people in the parking lot, who were wearing "dark gray and black robe[s] like head to toe."

Odom testified that, after Jackson asked for a lighter, Jackson shot Brewster. Murphy also testified that he witnessed Jackson lean into the car and shoot Brewster. Russell testified that an unknown person opened Brewster's car door and "a gun went off." Powell

5

testified that she saw "a figure coming," "heard a pop," Brewster's car drove off, and she was left in the parking lot.

According to Odom, after she and Russell took Brewster to the hospital, Russell told her, "[T]ake this car somewhere and go through the car, I know [Brewster] got more money somewhere in this car." However, Odom said she simply parked the car and did not search it. Odom also testified that, after she and Russell left the hospital, Russell asked Odom if she saw who shot Brewster, and Odom stated it was Jackson. Russell responded, "[D]on't you ever say his name, I don't want to hear you say his name." Russell then called Jackson and asked, "[B]aby, was you downtown?" Jackson asked, "Why?" and Russell responded, "[Odom] said she seen you." Russell then placed Jackson on speaker phone, and Jackson said to Odom, "[L]isten here, you fat [b**ch], if you go to them [ ] folks and say my name, I know where your fat [b**ch] stay at." Odom also testified that Russell told her "to say three guys with some rubber

boots on" shot Brewster.[2]

Lakeshia Ford testified that the day after the shooting she was at a social gathering and "it was said that [Jackson] was the shooter that killed [Brewster]." Ford looked over to Jackson and Russell, who were also at the gathering, and rolled her eyes. Jackson hit Ford in the face, telling her "to keep [her] mouth shut, b**ch."[3] During the trial, the State presented a recording of a phone call made by Jackson to Russell, during which Jackson asked Russell why she was "hanging around with [Ford]" and later said, "I need [Ford] . . . to say she put everything in [Odom's] head." Russell responded that she would speak with Ford and record it.

Additionally, Finnell testified that, after Jackson was arrested, Finnell was arrested on unrelated charges, and while he was in custody, he was attacked by Jackson.

Finally, Murphy testified that Jackson was associated with the

---

[2] During Russell's testimony, she admitted that she called Jackson after she left the hospital, but she denied that she told Jackson about what, if anything, Odom saw and denied that Jackson threatened Odom.

[3] At trial, Russell denied that she was present when this was alleged to have occurred.

Gangster Disciples street gang and Brewster was associated with the Crips street gang. Additionally, the State presented the testimony of Investigator Cedric Penson, who was admitted as an expert in criminal street gang activity. Investigator Penson testified that the Crips and Gangster Disciples are rival street gangs in Bibb County. For symbols, the Gangster Disciples used a pitchfork, the number 74, and the Star of David. Investigator Penson reviewed Jackson's tattoos and testified that Jackson had several tattoos depicting the Star of David and the number 74. Jackson also had a tattoo depicting tall buildings with "GDHQ" written on it. Investigator Penson testified that "GDHQ" meant "Gangster Disciples Headquarters" and the tall buildings symbolized Chicago, where the Gangster Disciples was founded.

Investigator Penson also testified that, based on phone records, Jackson appeared to have an association with three other members of the Gangster Disciples, including the leader of the Blac Team, a division of the Gangster Disciples. He further testified that Brewster was associated with the Crips and that he had noticed a trend of

8

gang-affiliated drug dealers getting robbed and that some of these robberies were committed by rival gang members because committing a violent crime "increase[d] their status" within the gang.

1. Jackson contends the trial court erred in denying his motion for new trial because the evidence presented at trial was insufficient to support his convictions. We disagree.

Evidence is constitutionally sufficient to support a conviction if, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Munn v. State*, 313 Ga. 716, 720 (1) (873 SE2d 166) (2022) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)). "This Court does not reweigh evidence or resolve conflicts in testimony but rather defers to the jury's assessment of the weight and credibility of the evidence." *Jones v. State*, 314 Ga. 692, 695 (878 SE2d 502) (2022) (citation and punctuation omitted).

(a) The evidence was sufficient to support the malice murder

and firearm convictions.

The evidence summarized above, including the testimony of two witnesses who saw Jackson shoot Brewster, was sufficient to authorize the jury to find Jackson guilty beyond a reasonable doubt of malice murder and possession of a firearm during the commission of a felony.

(b) The evidence was also sufficient to support the convictions for violating the Georgia Street Gang Terrorism and Prevention Act (the "Gang Act").

Jackson was convicted of violating the Gang Act by participating in criminal gang activity through the commission of the murder of Brewster while "associated with Gangster Disciples, a criminal street gang." Jackson was also convicted of violating the Gang Act by participating in criminal gang activity through the commission of "the offense of possession of a firearm by a convicted felon . . . by having in his possession . . . a firearm after having been convicted of the felony crime of aggravated assault" while "associated with Gangster Disciples, a criminal street gang." See

10

OCGA §§ 16-15-4 (a) ("It shall be unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of any offense enumerated in paragraph (1) of Code Section 16-15-3."); 16-15-3 (1) (J) (enumerated offenses include any criminal offense that involves violence or the use of a weapon). To convict Jackson, the State had to prove beyond a reasonable doubt that: (1) Jackson was associated with the Gangster Disciples; (2) the Gangster Disciples was a "criminal street gang"; (3) Jackson committed the predicate acts of murder and possession of a firearm by a convicted felon; and (4) the commission of those offenses was intended to further the interests of the Gangster Disciples. See *Jackson v. State*, 306 Ga. 706, 709 (1) (b) (832 SE2d 809) (2019).

Regarding the first two elements, Murphy testified that Jackson was a member of the Gangster Disciples, and Investigator Penson testified that Jackson had several tattoos signifying the Gangster Disciples. See OCGA § 16-15-3 (3) (existence of a gang "may be established by evidence of a common name or common

11

identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics"). Investigator Penson further testified that the Gangster Disciples was a criminal street gang, had at least three members, and the gang had committed violent crimes, including aggravated assault and murder. See OCGA § 16-15-3 (3) (defining a "criminal street gang" as "any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity").

Regarding the third element, as stated in Division 1 (a), the evidence authorized a finding that Jackson shot at and killed Brewster, establishing that he committed the predicate offense of murder. Additionally, the State presented evidence, as discussed in Division 2 (b) below, that Jackson was a convicted felon. Thus, the evidence authorized a finding that Jackson possessed a firearm while he was a convicted felon, establishing that he committed the predicate offense of possession of a firearm by a convicted felon.

Regarding the fourth element, the evidence showed that Brewster was a drug dealer and a member of a rival gang, the Crips.

12

Investigator Penson testified that gang-affiliated drug dealers were getting robbed and that these robberies were committed by rival gang members because committing a violent crime "increase[d] their status" within the gang. From this evidence, the jury was authorized to conclude that Jackson shot and killed Brewster in furtherance of the interests of the Gangster Disciples because he killed a rival gang-affiliated drug dealer. See *Jackson*, 306 Ga. at 709-710 (1) (b) (affirming convictions for violation of the Gang Act where the evidence showed, among other things, that the victim was a member of a rival gang). Based on this evidence, the jury was authorized to convict Jackson of the violations of the Gang Act for which he was charged (Counts 7 and 8).

2. Jackson contends his trial counsel provided constitutionally ineffective assistance by (a) failing to object to other-acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)") and failing to request a limiting instruction and (b) failing to stipulate that Jackson was a convicted felon. These claims fail.

To prevail on these claims, Jackson must demonstrate both

that his trial counsel's performance was professionally deficient and that he was prejudiced by this deficient performance. See *Bates v. State*, 313 Ga. 57, 62 (2) (867 SE2d 140) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To establish deficient performance, Jackson must show that trial counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. Establishing deficient performance

> is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably, and [the appellant] bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

*Park v. State*, 314 Ga. 733, 740-741 (2) (879 SE2d 400) (2022) (citation and punctuation omitted). To establish prejudice, Jackson must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been

14

different. See *Bates*, 313 Ga. at 62 (2). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation and punctuation omitted). "And, this burden is a heavy one." Id. at 62-63 (2) (citation and punctuation omitted). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Taylor v. State*, 315 Ga. 630, 647 (5) (b) (884 SE2d 346) (2023) (citation and punctuation omitted). "This Court accepts a trial court's factual findings and credibility determinations on an ineffectiveness claim unless they are clearly erroneous, but we apply legal principles to the facts de novo." *Bonner v. State*, 314 Ga. 472, 474 (1) (877 SE2d 588) (2022) (citation and punctuation omitted).

(a) Jackson contends his trial counsel provided constitutionally ineffective assistance by failing to object to Ford's testimony about Jackson hitting her and threatening her on the day after the murder and by failing to request a limiting instruction. We conclude that trial counsel did not perform deficiently.

In Jackson's view, counsel should have filed a motion to exclude

15

Ford's testimony under Rule 404 (b) and OCGA § 24-4-403 ("Rule 403") because it was "unduly prejudicial" and "offered simply to suggest propensity." Because the evidence was properly admitted as intrinsic evidence, we need not address its potential admission as extrinsic evidence under Rule 404 (b). See *Heade v. State*, 312 Ga. 19, 24 (3) (860 SE2d 509) (2021) (holding that Rule 404 (b) is not applicable to intrinsic evidence).

Evidence is admissible as intrinsic evidence when it is an uncharged offense that arises from the same transaction or series of transactions as the charged offense, is necessary to complete the story of the crime, or is inextricably intertwined with the evidence regarding the charged offense. See *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). Evidence may be intrinsic if it "pertain[s] to the chain of events explaining the context, motive, and set-up of the crime" and "is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime." *Heade*, 312 Ga. at 25 (3) (citation and punctuation omitted).

16

Here, Ford testified that the day after the shooting she was at a social gathering and "it was said that [Jackson] was the shooter that killed [Brewster]." Ford looked over to Jackson and Russell, who were also at the gathering, and rolled her eyes. Jackson hit Ford in the face, telling her "to keep [her] mouth shut, b**ch." After Jackson was arrested, he called Russell, asked her why she was "hanging around with [Ford]" and later said, "I need [Ford] . . . to say she put everything in [Odom's] head." Russell responded that she would speak to Ford and record her.

Ford's testimony regarding Jackson's assault of Ford and threat that she "keep [her] mouth shut" was evidence of an uncharged offense, i.e., aggravated assault or battery, arising from the same transaction as Brewster's murder. Ford's testimony showed Jackson's attempt to hide his involvement in Brewster's murder and explained why Jackson suggested Ford as a person who could "say she put everything in [an eyewitness's] head," i.e., he had already threatened her. Thus, Ford's testimony was admissible as intrinsic evidence. See *West v. State*, 305 Ga. 467, 473 (2) n.6 (826

17

SE2d 64) (2019) (where an attempt to influence a witness is an uncharged offense arising from the same transaction or series of transactions as the charged offense it would be properly treated as intrinsic evidence and thus not subject to the limitations and prohibition on other acts evidence set out in Rule 404 (b)).

But intrinsic evidence must still satisfy Rule 403. See *Williams*, 302 Ga. at 485 (IV) (d). Under Rule 403, "[r]elevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Wilson v. State*, 315 Ga. 728, 738 (8) (883 SE2d 802) (2023) (citation and punctuation omitted). "[I]nculpatory evidence is inherently prejudicial; it is only when unfair prejudice substantially outweighs probative value that Rule 403 permits exclusion." *Early v. State*, 313 Ga. 667, 671 (2) (b) (872 SE2d 705) (2022) (citation and punctuation omitted). "The prejudicial effect of evidence is unfair if the evidence has the capacity to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged, or an undue tendency to suggest decision on an improper basis, commonly,

though not necessarily, an emotional one." *Wilson*, 315 Ga. at 738 (8) (citation and punctuation omitted).

Here, Ford's testimony showed that Jackson used the threat of force to dissociate his name from Brewster's murder. Evidence that Jackson tried to conceal his part in the murder was obviously probative of his guilt. See *Richardson v. State*, 308 Ga. 70, 72 (3) (838 SE2d 759) (2020) (reasoning that the defendant's "attempt to conceal his involvement in the crimes was evidence of his guilt"). The probative value of this evidence was very high, and whatever unfair prejudice may have arisen from it did not substantially outweigh the high probative value. See *Morrell v. State*, 313 Ga. 247, 261 (2) (b) (869 SE2d 447) (2022) (concluding the probative value of the prior witness-intimidation evidence was not substantially outweighed by unfair prejudice).

Accordingly, trial counsel did not perform deficiently by failing to file a motion to exclude Ford's testimony under Rule 404 (b) and by failing to seek a corresponding limiting instruction because such actions would have been meritless, and this claim fails. See *Williams*

19

*v. State*, 315 Ga. 797, 806 (2) (884 SE2d 877) (2023) (trial counsel's failure to file a meritless motion is not deficient performance).

(b) Jackson contends his trial counsel provided constitutionally ineffective assistance by failing to stipulate that Jackson was a convicted felon. Assuming without deciding that Jackson's trial counsel performed deficiently, we conclude Jackson was not prejudiced by the introduction of his prior convictions.

Jackson was indicted for felony murder predicated on possession of a firearm by a convicted felon (Count 3), possession of a firearm by a convicted felon (Count 6), and violating the Georgia Gang Act predicated on possession of a firearm by a convicted felon (Count 8). The indictment identified the predicate felony conviction as aggravated assault in Counts 6 and 8, but not in Count 3.[4]

At trial, the State tendered Exhibit 49 as evidence of Jackson's convicted-felon status, and it was admitted without objection. In

---

[4] Jackson does not raise any claim regarding Count 3, which accuses Jackson of committing felony murder while in the commission of possession of a firearm by a convicted felon, without identifying the specific felony of which he was convicted.

20

presenting Exhibit 49, the prosecutor stated it was a "felony conviction for [Jackson] . . . for aggravated assault." Exhibit 49 included a certified copy of Jackson's 2007 indictment for aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon, predicated on a felony conviction for possession of cocaine. Exhibit 49 also included a copy of Jackson's sentence, which stated that the counts of possession of a firearm during the commission of a crime and possession of a firearm by a convicted felon were nolle prossed. The State did not present any details concerning the aggravated assault conviction or other indicted charges, and in closing argument, the State only referenced Jackson's aggravated assault conviction in relation to the charges concerning possession of a firearm by a convicted felon. Jackson argues his trial counsel's failure to stipulate to his convicted-felon status prejudiced him because the jury learned of his convictions for aggravated assault, possession of cocaine, and

possession of a firearm.[5]

"A defendant may be prejudiced by the admission of a prior conviction into evidence when the prior conviction is of the nature likely to inflame the jury's passions and raise the risk of a conviction based on improper considerations." *Willis v. State*, 315 Ga. 19, 28 (4) (a) (880 SE2d 158) (2022) (citation and punctuation omitted). And "this Court has held that even violent crimes, crimes involving firearms, and drug offenses were not likely to inflame the jury's passions in murder cases." *Parker v. State*, 309 Ga. 736, 745 (5) (848 SE2d 117) (2020).

Here, Jackson has not shown that informing the jury that he had been convicted of aggravated assault and that he had been charged with — but not convicted of — possession of a firearm during the commission of a felony and possession of a firearm by a convicted felon, predicated on a felony conviction for possession of

---

[5] However, as noted above, Jackson was indicted in 2007 for possession of a firearm during the commission of a felony and possession of a firearm by a convicted felon, with the predicate felony being possession of cocaine, Exhibit 49 is clear that Jackson was only convicted of aggravated assault and not of the firearms charges.

cocaine, likely inflamed the passions of the jury, particularly in the light of the nature of the charges and evidence against him. The evidence against Jackson was strong. Two eyewitnesses identified Jackson as the person who shot Brewster. One eyewitness also identified the vehicle, i.e., a champagne-colored SUV with a temporary car tag, that Jackson drove on the night of the shooting; this vehicle was in the parking lot when Brewster was shot and was located at Jackson's mother's house the next day. Further, three people testified that Jackson threatened them to prevent them from speaking about the murder. Additionally, as noted above, the aggravated assault conviction was identified only twice in passing, i.e., once when Exhibit 49 was introduced and once during closing argument. The prosecutor did not emphasize the nature of the aggravated assault conviction and never mentioned that Jackson was also charged with possession of a firearm during the commission of a felony and possession of a firearm by a convicted felon, predicated on a felony conviction for possession of cocaine.

Because the evidence against Jackson was strong and the

23

prosecutor did not emphasize the defendant's felony conviction when it was admitted into evidence or during closing argument, see *Collins v. State*, 312 Ga. 727, 749 (8) (d) (864 SE2d 85) (2021), we conclude that even if Jackson's counsel was deficient for failing to stipulate to his convicted-felon status, Jackson has failed to show that there is a reasonable probability that the result of his trial would have been different. See *Willis*, 315 Ga. at 28-29 (4) (a) (in a murder case, defendant not prejudiced by counsel's failure to stipulate to convicted-felon status, because evidence of guilt was strong and jury's passions were unlikely to be inflamed by prior conviction for possession of cocaine); *Ballard v. State*, 297 Ga. 248, 252-253 (6) (a), (773 SE2d 254) (2015) (same, with past convictions for aggravated assault and burglary with intent to commit aggravated assault); *Bentley v. State*, 307 Ga. 1, 8 (2) (b) (834 SE2d 549) (2019) (same, with past convictions for rape and incest, mentioning that "[t]he names and nature of the earlier convictions were not emphasized by the State"). Accordingly, Jackson's ineffectiveness claim fails.

(c) Finally, Jackson contends that his trial counsel provided constitutionally ineffective assistance by failing to request an accomplice-corroboration instruction with respect to Murphy's testimony.

We note that in his appellate brief, Jackson asserts that trial counsel's failure to request an accomplice-corroboration instruction was deficient, but he does not explain how counsel's deficiency was prejudicial. And "[i]t is well established that the burden is on the party alleging error to show it by the record." *Sillah v. State*, 315 Ga. 741, 751 (3) (883 SE2d 756) (2023) (citation and punctuation omitted). Nevertheless, assuming without deciding that Jackson's counsel performed deficiently, we conclude that Jackson has not established that he was prejudiced.

OCGA § 24-14-8 provides in pertinent part that "[t]he testimony of a single witness is generally sufficient to establish a fact. However, in . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient." "Where accomplice testimony is the bedrock of the conviction, it may

25

be likely that the jury convicted the defendant on the accomplice's testimony alone." *Payne v. State*, 314 Ga. 322, 326 (1) (877 SE2d 202) (2022) (citation and punctuation omitted).

Here, the most incriminating evidence against Jackson did not come from Murphy — it came from Odom. Odom told police that Jackson shot Brewster, described the SUV he was driving the night of the murder, and that the SUV could be located at Jackson's mother's house, which is where it was found the next day. Odom also stated that Jackson threatened her after Jackson learned that Odom witnessed the shooting. Additionally, Finnell testified that Jackson and Murphy stopped by Finnell's house prior to the murder and asked him about committing a robbery. The day after the murder, Jackson threatened Finnell to keep him from speaking with police, and Murphy admitted to Finnell that Jackson shot someone. While Murphy testified that he witnessed Jackson shoot Brewster, he denied any involvement in the shooting, and he specifically denied speaking to Finnell about it before or after it occurred.

Due to the extensive corroboration of Murphy's limited

26

testimony and the other significant independent evidence of Jackson's guilt, there is not a reasonable probability that, but for counsel's alleged deficiency, the outcome of the trial would have been different. Thus, Jackson has failed to show prejudice, and this claim fails. See *Payne*, 314 Ga. at 329 (3) (a) (concluding that the defendant failed to show he was prejudiced by trial counsel's failure to request an accomplice-corroboration instruction because "some of the most incriminating testimony came from witnesses who could not reasonably be considered accomplices in the murder," id. at 326 (1), and the accomplice's testimony was corroborated by those witnesses or other evidence).

3. In a related claim, Jackson contends that the trial court plainly erred by failing to instruct the jury on accomplice corroboration. Assuming without deciding that the trial court erred by failing to give the instruction, we conclude Jackson failed to show that it likely affected the outcome of the trial court proceedings.[6]

---

[6] Similar to our note in Division 2 (c), we note that Jackson does not explain how the trial court's failure to give the accomplice-corroboration instruction likely affected the outcome of his trial.

27

Because Jackson's trial counsel did not object to the omission of the accomplice-corroboration instruction, we review the trial-court-error claim for plain error only. "To show plain error, an appellant must show that (1) the alleged error was not affirmatively waived, (2) it was obvious beyond reasonable dispute, and (3) it affected the appellant's substantial rights, which ordinarily means showing that it affected the outcome of the trial." *Willis*, 315 Ga. at 26 (3) (b). "This Court does not have to analyze all elements of the plain-error test where an appellant fails to establish one of them." *Payne*, 314 Ga. at 325 (1).

This Court has equated the prejudice step of the plain-error standard with the prejudice prong for an ineffective assistance of counsel claim. See *Payne*, 314 Ga. at 329 (3) (a). Thus, even if we assume that the trial court erred in not giving an accomplice-corroboration instruction, Jackson has not shown that this assumed error likely affected the outcome of the proceedings for the reasons explained in Division 2 (c). See *Williams v. State*, 315 Ga. 490, 497 (3) (883 SE2d 733) (2023) (concluding that the defendant failed to

28

show plain error when "all of the material facts from [the accomplice's] testimony were independently corroborated by other witnesses and evidence, such that [the accomplice's] testimony was cumulative of other evidence properly admitted at trial").

4. Finally, because we (a) assumed deficiency in Division 2 (b) relating to trial counsel's failure to stipulate to Jackson's status as a convicted felon, (b) assumed deficiency in Division 2 (c) relating to trial counsel's failure to request an accomplice-corroboration instruction, and (c) assumed error in Division 3 relating to the trial court's failure to give an accomplice-corroboration instruction, we consider whether the cumulative prejudicial impact of these admissions requires a new trial. "Under *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020), we must 'consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel.'" *Talley v. State*, 314 Ga. 153, 165-166 (4) (875 SE2d 789) (2022). To establish cumulative error, Jackson must show that (1) at least two errors were committed in the course of the trial; and (2) considered together along with the

29

entire record, the multiple errors so infected the jury's deliberation that they denied Jackson a fundamentally fair trial. See *Flood v. State*, 311 Ga. 800, 808 (2) (d) (860 SE2d 731) (2021). Given our conclusions above and assuming without deciding that the evidentiary error and the instructional error could be aggregated for cumulative-error review,[7] we conclude Jackson has failed to establish that the combined prejudicial effect of these errors require a new trial. See *Jones v. State*, 314 Ga. 605, 617 (5) n.9 (878 SE2d 505) (2022).

*Judgment affirmed. All the Justices concur.*

---

[7] As we have said,

> *Lane* involved only evidentiary issues, which usually are easily cumulated. *Lane*, 308 Ga. at 17 (1). We made explicit in *Lane* that "[s]ome other types of error may not allow aggregation by their nature, but that question is not presented here." Id.

*Jones v. State*, 314 Ga. 605, 617 (5) n.9 (878 SE2d 505) (2022).

Decided August 21, 2023.

Murder. Bibb Superior Court. Before Judge Simms.

*Kempter Law Group, Christina M. Kempter*, for appellant.

*Anita R. Howard, District Attorney, Cynthia T. Adams, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.