321 Ga. 717
FINAL COPY

S25A0066. FLOYD v. THE STATE.

Colvin, Justice.

Appellant Tellisavoris Floyd appeals his convictions for felony murder related to the shooting death of Sean Turner and for armed robbery and other crimes committed against Turner and Stephen Thomas.[1] Appellant argues that the evidence was insufficient as a

---

[1] The crimes occurred on December 4, 2015. On March 3, 2017, a Fulton County grand jury returned an 11-count indictment against Appellant and Cornelius Seabrum. Appellant was charged with malice murder (Count 1), felony murder in the commission of the armed robbery of Turner (Count 2), felony murder in the commission of aggravated assault with a deadly weapon against Turner (Count 3), felony murder in the commission of hijacking a motor vehicle (Count 4), armed robbery for theft of Turner's cell phone (Count 5), armed robbery for theft of Thomas's wallet (Count 6), aggravated assault with a deadly weapon against Turner by shooting him with a handgun (Count 7), aggravated assault with a deadly weapon by pointing a handgun at, toward, and in the direction of Turner (Count 8), aggravated assault with a deadly weapon by pointing a handgun at, toward, and in the direction of Thomas (Count 9), hijacking a motor vehicle (Count 10), and possession of a firearm during the commission of a felony (Count 11).

Appellant was tried before a jury from March 13 through 17, 2017, and the jury found Appellant guilty on all counts except Counts 1 (malice murder), 8 (aggravated assault against Turner), and 9 (aggravated assault against Thomas). The trial court sentenced Appellant to life in prison for felony murder (Count 2). The court also imposed 20-year concurrent sentences for the armed robbery charge (Count 6) and the aggravated assault with a deadly weapon

matter of constitutional due process to support his convictions for felony murder (Count 2) and armed robbery of Turner's cell phone (Count 5), that the trial court plainly erred by failing to charge the jury on accomplice corroboration, that the trial court erred by denying Appellant's motion for mistrial after his right to confront a witness under the Sixth Amendment was allegedly violated, that the trial court erred by admitting testimony over objection regarding Appellant's alleged gang involvement, and that his trial counsel was ineffective in several ways. We affirm Appellant's convictions for the reasons explained below.

The trial evidence showed the following. Turner and his friend, Thomas, were riding around Atlanta in Turner's white BMW during the evening of December 4, 2015, looking for things to do. Both were

---

charge (Count 7); a 20-year consecutive sentence for the hijacking of a motor vehicle charge (Count 10); and a five-year consecutive sentence for the possession of a firearm during the commission of a felony charge (Count 11). The remaining charges were either merged or vacated by operation of law.

Appellant filed a motion for new trial on March 28, 2017, which he amended through new counsel on January 18, 2021. The trial court denied Appellant's motion for new trial on November 28, 2022 but vacated and reentered the order on March 8, 2024. Appellant filed a timely notice of appeal with this Court that same day, and the case was docketed to the term of court beginning in December 2024.

carrying their cell phones at the time. The two stopped at a gas station where they ran into a mutual friend, Deanthony White, also known as "Sosa." Turner and Thomas told White that they were looking for drugs, and White said that he could assist them in doing so. The three then left the gas station with White getting into his girlfriend's car and Turner and Thomas getting into Turner's car. White's girlfriend drove away from the gas station, and Turner and Thomas followed her to an apartment complex. Video surveillance footage from the gas station, which was entered into evidence and played for the jury, showed Turner, Thomas, and White interacting and leaving at the same time.

When they arrived at the apartment complex, White got out of his girlfriend's car and went inside while Thomas and Turner stayed behind in Turner's BMW. White came back with two men and told Thomas and Turner that the men would accompany them to a drug deal. The two men got in the back seat of Turner's car, and White got back into his girlfriend's car, which then pulled off.

Thomas testified that the men in the back seat told Thomas

and Turner that they would give them directions. According to Thomas, once they had driven for some time, the men in the back seat said that the destination was nearby and that Turner could "pull off" on the road. Once Turner parked, Thomas testified, he and Turner "both felt guns come up to [their] heads," and Thomas felt an arm around his neck. According to Thomas, the men in the back seat then said, "This is how it's going to go[,]" and "Give us all your stuff." Thomas further testified that the men "were basically reaching in [their] pockets[,]" that the men took Thomas's phone, that he could "kind of see out of the corner of [his] eye [that] they were reaching into Sean's pockets[,]" and that, once the men had "got[ten] everything from [them]" they instructed Thomas and Turner to get out of the car.

Thomas and Turner got out of the car as instructed. Then, according to Thomas, the men "climbed over through the console area[,]" got into the driver and passenger seats, and drove off before stopping at a red light that was about 50 feet away. Similarly, a bystander testified that he saw two men exit a car abruptly before it

4

sped off toward a nearby light. At that point, Turner chased after the car and opened the driver's side door. He was shot after a brief scuffle with the driver.

Detective Kevin Leonpacher, an expert in cell phone data interpretation with the Atlanta Police Department, testified that at 8:58 p.m. on December 4, 2015, Appellant's cell phone showed activity "in an area not far from the shooting"; that dispatchers received a 911 call regarding the shooting at 9:12 p.m.; and that at 9:25 p.m., Appellant's cell phone was either off or in airplane mode.

Thomas testified that he ran to help Turner after Turner had been shot and that a stranger approached them. Thomas further testified that he told the stranger to call the police because he did not have a phone. Likewise, a witness to the crime testified that, after Turner was shot, the witness asked Thomas if he had a phone and Thomas replied, "No. They took everything." The witness testified that he then ran to his house to get his phone to dial 911.

First responders arrived at the scene, and Turner was taken to a hospital but died the next morning. A medical examiner testified

5

that Turner's cause of death was a gunshot wound to the abdomen. The medical examiner retrieved a projectile from Turner's body, which a firearms examiner identified at trial as a ".380 metal jacket bullet." The items that Turner had on his person on the night of the crime were photographed, but a cell phone was not among them.

Five days after the shooting, Turner's car was found on fire in a cul-de-sac. The car was severely damaged, and an officer testified that he did not find any items in the car because it was "burn[ed] up." The expert in cell phone data interpretation testified that around the time Turner's car was found, Appellant's cell phone showed activity in the same area in which Turner's vehicle was recovered.

During the investigation, Thomas told officers that he and Turner had initially met "Sosa" at a gas station on the night of the crime, and Thomas later identified a photograph of White in a photographic lineup as the person he knew as "Sosa." Detectives began a search for White, who voluntarily approached them and agreed to an interview once he knew that the detectives were looking

6

for him. White told Detective Darrin Smith that the two men who got into Turner's car on the night of the crime were known as "Tellis" and "Fat." White used Detective Smith's computer to log into one of White's social media accounts and pull up a picture of "Tellis." Using the information that White provided, another detective identified Appellant as the suspect. Detective Smith then created two photographic lineups, each with a picture of Appellant.

Thomas identified Appellant's photograph with confidence that he was one of the two men who were in the car and with "seven out of ten sure[ty]" that Appellant was the shooter. White identified a photograph of Cornelius Seabrum as "Fat," one of the two men who got in the back of Turner's car. White also identified the photograph of Appellant as "Tellis," the second of the two individuals who got into Turner's vehicle on the night of the crime. And at trial, White made an in-court identification of Appellant as "Tellis."

Law enforcement officers obtained an arrest warrant for Appellant, whom they found outside of Jeffrey Whitley's apartment, which Appellant sometimes visited. Officers apprehended Appellant

7

there, and Whitley handed them a 9mm handgun. At trial, Detective Smith testified that he did not find any of the items that were taken from Turner on Appellant's person. And a firearms examiner testified that the 9mm handgun did not fire the bullet that the medical examiner retrieved from Turner's body.

Tralonda McCartney testified that she was the mother of Appellant's child and that, around Christmas 2015, she lived with Whitley, who was a friend of her parents. Throughout her testimony, McCartney denied receiving any information regarding the crime from Appellant, relaying that information to Whitley, or knowing anything about the crime in general. Likewise, McCartney's friend, Harmony Gilyard, also testified that she had no knowledge of the crime and that she did not relay any information to Whitley.

Whitley was called to testify after McCartney and Gilyard. Contrary to McCartney's testimony, Whitley testified that McCartney said that Appellant told her that "he killed that boy." Whitley further testified that Gilyard said that Appellant told her that he killed someone. According to Whitley, Gilyard thought

8

Appellant was "just playing."

1. Appellant argues that the evidence was insufficient as a matter of constitutional due process to support his convictions for felony murder and the predicate offense of armed robbery for theft of Turner's cell phone. Specifically, Appellant argues that his conviction on Count 5 for armed robbery should be reversed and barred from retrial because no evidence showed that Turner's cell phone was taken.[2] He further contends that his conviction on Count 2 for felony murder should be reversed and barred from retrial because it was predicated on the armed robbery. For the reasons that follow, his claims fail.

When reviewing the sufficiency of the evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "This

---

[2] Appellant was not sentenced on Count 5 because it merged with Count 2. Therefore, Appellant's challenge to the armed robbery count is moot. *Long v. State*, 287 Ga. 886, 887-888 (1) (700 SE2d 399) (2010) (holding that the appellant's contention that evidence was insufficient as to certain counts was moot because the counts had merged).

Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted).

Under Georgia law, a person commits the offense of felony murder when, "in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). Moreover, a person commits the offense of armed robbery when "with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a).

Here, the evidence was constitutionally sufficient to support Appellant's conviction for felony murder predicated on armed robbery for the theft of Turner's cell phone. Thomas testified that both he and Turner had cell phones on the night of the crime; that they "both felt guns come up to [their] heads"; that the men in the

10

back seat of Turner's car ordered them to give up "all [their] stuff"; that he saw them reaching into Turner's pockets; that they instructed Turner and Thomas to get out of the car once they had taken "everything"; and that the men took Thomas's phone, so Thomas had to ask a stranger to call the police. Finally, Turner's cell phone was not among his personal items that were photographed from the night of the crime. Nor was Turner's cell phone recovered from his burned car. This evidence, though circumstantial, was constitutionally sufficient to support armed robbery, and thus, Appellant's conviction for felony murder predicated on armed robbery.[3] See *Perdomo v. State*, 307 Ga. 670, 672-674 (2) (a) (837 SE2d 762) (2020) (upholding the appellant's conviction for felony murder predicated on criminal attempt to commit armed robbery based on evidence, in part, that "[the victim's] assailant made a demand for property immediately before shooting him" and "[the victim] always carried a wallet on his person but that it was missing

---

[3] Appellant also suggests that there was a fatal variance. This claim fails for the same reason as explained above, which shows that the trial evidence did authorize a jury finding that Appellant stole the cell phone.

11

when he was found"); *Waller v. State*, 311 Ga. 517, 522 (2) (a) (858 SE2d 683) (2021) (upholding the appellant's convictions for felony murder and armed robbery of the victim's backpack containing cash in light of "evidence show[ing] that when [the victim] arrived in Columbus, he had a black backpack in his possession, but when his body was located . . . , he was no longer in possession of the backpack"; that the appellant believed the victim's backpack contained about $40,000 in cash; that the appellant exchanged text messages with others "intimating that [he] wanted to rob [the victim]"; and that the appellant admitted to his cellmate that he and his cousin robbed and killed someone for $40,000), overruled on other grounds by *Cook v. State*, 313 Ga. 471, 503 (3) (e) (870 SE2d 758) (2022).

2. Appellant also argues that White was an accomplice whose testimony required corroboration and that the trial court committed plain error when it charged the jury that the testimony of a single witness was sufficient to establish a fact but failed to instruct the jury on the requirement for accomplice corroboration under OCGA §

24-14-8. This claim also fails.

Because Appellant's counsel did not object to the omission of an accomplice-corroboration instruction, we review this claim only for plain error. See OCGA § 17-8-58. To establish plain error, Appellant must meet each of the following requirements:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Williams v. State*, 315 Ga. 490, 495 (2) (883 SE2d 733) (2023) (citation and punctuation omitted; emphasis in original). "This Court does not have to analyze all elements of the plain-error test where an appellant fails to establish one of them." *Payne v. State*, 314 Ga. 322, 325 (1) (877 SE2d 202) (2022).

13

Under Georgia law, "[t]he testimony of a single witness is generally sufficient to establish a fact[,]" but "in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient." OCGA § 24-14-8. A trial court errs when it fails to give an accomplice-corroboration instruction and there is "slight evidence supporting a finding that a witness was an accomplice." *Walter v. State*, 304 Ga. 760, 766 (3) (b) (822 SE2d 266) (2018). The error may not have affected the appellant's substantial rights, however, if the accomplice testimony was corroborated by "evidence outside of the testimony provided by the accomplice." See *Hawkins v. State*, 304 Ga. 299, 303 (3) (818 SE2d 513) (2018).

Pretermitting whether the trial court's failure to charge the jury on accomplice corroboration constituted a clear or obvious error, that failure "did not likely affect the outcome of [Appellant's] trial" under the third prong of the plain-error analysis, so Appellant's claim fails. *Hawkins*, 304 Ga. at 303 (3). Here, White identified Appellant in a photographic lineup and at trial as one of the two men

14

who entered Turner's car on the night of the crime. White's testimony was corroborated by Whitley and Thomas, who offered some of the most incriminating evidence against Appellant. Whitley testified that Gilyard and McCartney said that Appellant told them that he murdered someone. And Thomas identified Appellant in a lineup. For these reasons, Appellant cannot show that the outcome of the trial would have been different if the court had given the accomplice-corroboration charge. Because Appellant cannot show prejudice in this way, his claim of plain error fails. See *Jackson v. State*, 317 Ga. 95, 105 (2) (c) (891 SE2d 866) (2023) (holding that the appellant was not prejudiced by his trial counsel's failure to request an accomplice-corroboration charge, in part, because the accomplice's testimony was not the "bedrock" of the appellant's conviction when "the most incriminating evidence against [the appellant] did not come from [an accomplice]" but from other witnesses, including one who told police "that [the appellant] shot [the victim]"); *Hawkins*, 304 Ga. at 303 (3) (holding that the trial court's failure to charge the jury on accomplice corroboration was

15

unlikely to affect the outcome of the trial where there was evidence outside of the accomplice's testimony to "connect [the appellant] to [the victim's] murder . . . including [the appellant's] own admission to [his associate's sister] that he had shot someone at the club" and "eyewitness accounts from [the victim's] friends who recognized [the appellant] from their altercation at the club"); *Hamm v. State*, 294 Ga. 791, 797 (2) (756 SE2d 507) (2014) (holding that the trial court's failure to charge the jury on accomplice corroboration was harmless when, "[i]n addition to [the alleged accomplice's] testimony, the State adduced, through [the appellant's friend], [the appellant's] own admission that he had 'killed an amigo' and [the appellant's] statement that 'his girl had set up a lick[4]'").

3. Appellant next contends that the trial court violated his Sixth Amendment right to confront a witness against him by overruling his objections and denying his motion for mistrial after the State called a co-indictee who refused to testify. We disagree.

Seabrum was named in the indictment with Appellant. At trial,

---

[4] A "lick" is a slang term for "robbery." *Hamm*, 294 Ga. at 797 (2).

the prosecution announced in the jury's presence that it would call Seabrum to the witness stand. The trial court then excused the jury for a break before Seabrum entered the courtroom. Seabrum's counsel appeared and notified the court that she had filed an ex parte "motion for evaluation" because she was "concern[ed] [about] whether or not Mr. Seabrum underst[ood] what [wa]s going on." Seabrum's counsel represented to the court that, according to Seabrum's mother, Seabrum read and understood at a third-grade level. The trial court then posed a series of questions to Seabrum, none of which he answered. The trial court held Seabrum in contempt, and Seabrum was never brought before the jury to testify.

Trial counsel objected on the grounds that it was prejudicial for Seabrum not to testify after the State called him as its next witness because it would insinuate that Seabrum was "influenced by someone, particularly [Appellant]." Trial counsel also moved for mistrial, arguing that Appellant's Sixth Amendment right to confront the witnesses against him was violated because Seabrum's refusal to testify after the State called his name was prejudicial in

17

that it "raise[d] an inference of guilt on [Appellant]." The trial court denied Appellant's motion for mistrial. Afterward, the trial court addressed the jurors, saying, "Sometimes witnesses are called in different orders for a variety of reasons. We are now going to resume the trial." The court then directed the State to call its next witness, which was McCartney.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U. S. Const. Amend. VI. An appellant's right to confrontation under the Sixth Amendment may be violated when the prosecution calls an appellant's co-indictee to the stand, and "*in the jury's presence, pose[s] a series of leading questions suggesting the guilt of the accused*" while the co-indictee invokes the Fifth Amendment or otherwise refuses to testify. *Horne v. State*, 281 Ga. 799, 807 (5) (642 SE2d 659) (2007) (emphasis supplied). We review the denial of a motion for mistrial for abuse of discretion. See *McCabe v. State*, 319 Ga. 275, 282 (2) (a) (903 SE2d 78) (2024).

18

Here, Appellant's Sixth Amendment right to confront the witnesses against him was not violated because "[Seabrum] never appeared before the jury and, consequently, was not required to exercise his right to remain silent repeatedly as the prosecutor posed a line of questions suggestive of [Appellant's] guilt." *Hendricks v. State*, 283 Ga. 470, 472 (3) (660 SE2d 365) (2008).

Moreover, once the court decided that Seabrum would not take the stand that day, it told the jury that witnesses are sometimes called out of order. The trial court never told the jury that Seabrum was refusing to speak and was being held in contempt. The court's choice of language further minimized the probability that Seabrum's failure to testify would implicate Appellant in the crimes. Cf. *Hendricks*, 283 Ga. at 472 (3) (holding that the appellant did not suffer prejudice when the trial court "informed the jury that [his co-indictee] . . . had refused to testify notwithstanding [a] proffer of immunity and had, therefore, been held in contempt"). The trial court did not abuse its discretion in overruling Appellant's objection and denying his motion for mistrial for these reasons.

4. Appellant further argues that the trial court abused its discretion in admitting testimony on redirect that Appellant was allegedly involved with a gang. Appellant asserts that the evidence should have been excluded as inadmissible character evidence under OCGA § 24-4-404 (b), and that it was highly prejudicial, and thus, inadmissible under OCGA § 24-4-403. These claims, too, fail.

At trial, McCartney was called as a witness prior to Whitley. Under direct examination, she denied telling Whitley that Appellant told her that he committed the crime. The prosecution then called Whitley to "impeach . . . McCartney." Whitley testified that when Appellant was arrested at his apartment, McCartney was present and told Whitley that Appellant told her that he killed someone.

On cross-examination, trial counsel asked Whitley if he was "shocked to hear that Mr. Floyd was being charged with murder," to which Whitley responded, "Yeah." Trial counsel further asked Whitley whether it was "correct" that he would "never think that [Appellant] would be involved in . . . murder[.]" And Whitley responded, "That's totally correct."

20

On redirect, the prosecution asked Whitley if he "remember[ed] talking to Detective Smith about gang information[.]" Trial counsel objected, arguing, in part, that "it appear[ed] . . . that the State [wa]s getting ready to get into some improper character evidence . . . and that [it] would be a violation of [Appellant's] Sixth Amendment right[.]" In response, the prosecution argued that trial counsel made the "improper character evidence" relevant by asking Whitley whether he was "shocked" that Appellant was involved "in anything bad." The trial court agreed with the prosecution and overruled trial counsel's objection.

The prosecution continued its examination as follows:

PROSECUTOR: You said you didn't recall [talking to Detective Smith about gang information]?
WHITLEY: No. Why would I speak about gang information?
PROSECUTOR: If I showed you a copy of the transcript of your recorded statement, would that refresh your recollection?
WHITLEY: Yeah.

. . .

PROSECUTOR: So what did you say about gang information to —
WHITLEY: At the time I thought it was a gang but it wasn't a gang. It was some —

TRIAL COUNSEL: Your Honor, then I would renew my objection at this time.
COURT: The objection is overruled.
WHITLEY: It was a rap organization. They do music and stuff, but it's not a gang.
PROSECUTOR: What is it called?
WHITLEY: Twenty-one Savvy or something. I don't know.

On appeal, Appellant argues that the door was not opened to evidence of his alleged gang involvement; that the trial court erred by overruling his objection under OCGA § 24-4-404 (b) insofar as Whitley's testimony was inadmissible character evidence; and that the evidence was highly prejudicial.

"We review a trial court's ruling to admit evidence for an abuse of discretion." *Mitchell v. State*, 320 Ga. 673, 677 (3) (911 SE2d 607) (2025). Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules[.]" OCGA § 24-4-402.

22

Under OCGA § 24-4-403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Moreover, OCGA § 24-4-404 (b) provides that

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

OCGA § 24-4-404 (b).

Here, we need not decide whether the trial court abused its discretion in admitting evidence that Whitley once suspected that Appellant was in a gang because any error was harmless. Whitley made only one comment about his suspicion of Appellant's gang involvement. Then he immediately clarified his statement by explaining that the alleged gang was actually a rap organization. Because of Whitley's clarification and the strong evidence against Appellant, Appellant cannot show that he was harmed by the admission of the gang-related evidence, and his claim fails. Cf. *Strother v. State*, 305 Ga. 838, 848 (4) (d) (828 SE2d 327) (2019)

23

(holding that the appellant was not prejudiced by the admission of gang-related evidence when the "State made no attempt to prove that [the appellant] had actually been a gang member or committed other murders[,]" "the prosecutor did not question . . . witness[es] about [the appellant's] gang activities[,]" and "[the appellant] d[id] not contend that the prosecutor emphasized (or even mentioned) that evidence during his closing").

5. Appellant next argues that his counsel rendered ineffective assistance in several instances. He asserts that trial counsel was ineffective in (a) failing to file a general demurrer to Count 10 for motor vehicle hijacking after the jury was sworn and jeopardy attached; (b) failing to request an accomplice corroboration charge under OCGA § 24-14-8; (c) failing to renew Appellant's objection to the trial court's refusal to instruct the jury on the lesser-included offense of voluntary manslaughter; and (d) failing to move in limine to exclude the 9mm handgun discovered by law enforcement officers following Appellant's arrest. Each of Appellant's assertions fail, as explained below.

24

"To prevail on any of his claims, [Appellant] must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficient performance." *Lynn v. State*, 310 Ga. 608, 612 (4) (852 SE2d 843) (2020) (citing *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To establish deficiency, Appellant "must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." *Vendrel v. State*, 318 Ga. 233, 240 (2) (897 SE2d 751) (2024) (citation and punctuation omitted). To establish prejudice, Appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lynn*, 310 Ga. at 612-613 (4) (citation and punctuation omitted). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Stallworth v. State*, 304 Ga. 333, 334 (2) (818 SE2d 662) (2018) (citation and punctuation omitted).

(a) Trial counsel was not deficient for failing to file a general demurrer on Count 10 for hijacking a motor vehicle. "A person commits the offense of hijacking a motor vehicle in the first degree when such person while in possession of a firearm or weapon obtains a motor vehicle from an individual or the presence of another individual by *force and violence or intimidation* or attempts or conspires to do so." OCGA § 16-5-44.1 (b) (1) (emphasis supplied). "[T]o withstand a general demurrer, an indictment must: (1) recite the language of the statute that sets out all the elements of the offense charged, or (2) allege the facts necessary to establish violation of a criminal statute." *Jackson v. State*, 301 Ga. 137, 141 (1) (800 SE2d 356) (2017). Here, Appellant argues that Count 10 was subject to a general demurrer because the indictment allegedly omitted an element of OCGA § 16-5-44.1 (b) (1), that Appellant obtained Turner's vehicle by "force *and violence*[.]" OCGA § 16-5-44.1 (b) (1) (emphasis supplied). But rather than argue that the statute is ambiguous, Appellant argues that the statute should be interpreted as requiring both force *and* violence and that the

26

indictment is insufficient because it does not allege the latter. Appellant, however, ignores the statute's plain language which necessitates that the offense be committed by "force and violence *or intimidation.*" OCGA § 16-5-44.1 (b) (1) (emphasis supplied). Here, in addition to alleging that Appellant obtained possession of Turner's vehicle by force, the indictment also alleged intimidation. Accordingly, the indictment alleged the necessary elements of hijacking, and Appellant's claim fails. See *Reddick v. State*, 321 Ga. 73, 85 (3) (b) (911 SE2d 638) (2025) ("[C]ounsel cannot be deemed deficient for failing to make a meritless objection.").

(b) Appellant's counsel was not ineffective for failing to request an accomplice-corroboration instruction because Appellant cannot show that he was prejudiced by any deficiency of trial counsel. "[T]he test for prejudice in the ineffective assistance analysis is equivalent to the test for harm in plain error review." *Knighton v. State*, 310 Ga. 586, 597 (2) (c) (853 SE2d 89) (2020) (citation and punctuation omitted). And as explained in Division 2, Appellant has not carried his burden of showing that the outcome of the trial would have been

different. See Division 2, supra. Accordingly, this claim fails.

(c) Trial counsel was not deficient for failing to renew an objection to the trial court's refusal to instruct the jury on the lesser offense of voluntary manslaughter. Under Georgia law, "[i]f there is any evidence, however slight, to support a properly requested charge of voluntary manslaughter, then the trial court must give it." *Thompson v. State*, 312 Ga. 254, 257 (2) (862 SE2d 317) (2021) (citations and punctuation omitted). But when a victim is simply resisting an unlawful act, as here, a voluntary manslaughter charge is not warranted. *Johnson v. State*, 313 Ga. 698, 700 (873 SE2d 123) (2022) ("[R]esist[ing] [an] unlawful act . . . is not the type of provocation which demands a voluntary manslaughter charge" (citation and punctuation omitted)); *Nance v. State*, 272 Ga. 217, 221 (3) (526 SE2d 560) (2000) ("[A] voluntary manslaughter charge is not warranted when the only alleged evidence of provocation is the victim resisting an armed robbery."); *Turpin v. Christenson*, 269 Ga. 226, 234 (12) (A) n.6 (497 SE2d 216) (1998) (holding that "[a] voluntary manslaughter charge [wa]s not warranted" when "[t]he

28

trial evidence . . . showed that [the defendant] initiated an armed robbery by pointing a gun at the victim, without provocation, and then killed the victim when he resisted"). Thus, Appellant's counsel was not deficient for failing to make a meritless objection. See *Reddick*, 321 Ga. at 85 (3) (b).

(d) Trial counsel was also not deficient for failing to move in limine to exclude evidence of the 9mm handgun. Appellant argues that the handgun had no relevance to a triable issue and should have been excluded under OCGA §§ 24-4-401 and 24-4-404 (a). He further argues that the probative value of the evidence was substantially outweighed by its prejudicial effect of showing Appellant's propensity for gun violence under OCGA § 24-4-403. These arguments fail.

Thomas testified that there were two guns used to commit the crime: one that was pointed at his head, the other that was pointed at Turner's. Though law enforcement officers determined that the gun they recovered when Appellant was arrested was not used to shoot Turner, it was relevant under OCGA § 24-4-401 because it

showed that Appellant had access to a gun which could have been the second gun used to commit the crimes. Cf. *Jackson v. State*, 318 Ga. 393, 400 (1) (d) (i) (897 SE2d 785) (2024) (holding that testimony from one witness that the appellant held a 9mm handgun during the altercation in which the victim was shot and testimony from another witness that the appellant had a gun of "an unspecified caliber the day before the shooting" was relevant because it "tended to show that [the appellant] had access to such a gun[,]" even though "no bullets were recovered from [the victim's] body" and it was "unclear from the wounds what caliber of gun was used[,]" though a 9mm casing was found at the scene).

Moreover, the trial court would not have abused its discretion by denying a motion to exclude the evidence of the handgun under OCGA § 24-4-404 (a) or § 24-4-403. Appellant asserts that the handgun should have been excluded because of the "risk of undue prejudice . . . showing [his] propensity for gun violence," but our caselaw shows that evidence that a defendant owned or carried a gun is not necessarily bad character evidence which shows a

30

propensity for gun violence. See *Adams v. State*, 318 Ga. 105, 118 (3) (b) (897 SE2d 396) (2024) ("[G]un ownership and the custom of carrying a gun do not, by themselves, impute bad character." (citation and punctuation omitted)); see also *Henderson v. State*, 272 Ga. 621, 622 (2) (532 SE2d 398) (2000) (holding that evidence which showed that the appellant owned guns did not "impute[ ] bad character" and distinguishing that case from another in which testimony showed that the accused "had a reputation for *carrying and shooting* a gun" (emphasis in original)).

Here, evidence that law enforcement officers recovered a gun from Whitley when they arrested Appellant at Whitley's apartment was probative to show that Appellant once owned, carried, or had access to a gun that could have been the second gun used in the crimes. And any unfair prejudice to Appellant was minimal as it was not likely that the jury found Appellant guilty of the crimes solely because he was associated with a gun, particularly given the other compelling evidence of his guilt. See *Lyons v. State*, 309 Ga. 15, 22-23 (5) (843 SE2d 825) (2020) (rejecting the appellant's argument

that a photograph showing "[the appellant] in possession of a gun . . . improperly placed his character in issue and was highly prejudicial" under OCGA §§ 24-4-403 and 24-4-404 (a) because (1) "[t]he photograph was relevant to show that [the appellant], at some point, possessed the type of gun used in the crimes at issue" and (2) "[t]he probative value of this evidence was not substantially outweighed by its prejudice" because "evidence that a defendant owned and frequently carried a pistol does not impute to him generally bad character" (citation and punctuation omitted)); *Davidson v. State*, 304 Ga. 460, 462-464 (1)-(2) (819 SE2d 452) (2018) (holding that OCGA § 24-4-403 did not require the exclusion of evidence showing that investigators recovered ".40-caliber ammunition" from the appellant's home when the deceased victim was shot and killed with a ".40-caliber bullet" because "the prejudicial impact was limited" given that "the connection between the ammunition found in the home and the bullet with which [the victim] was shot was tenuous" because of testimony that a ".40-caliber handgun," also found in the appellant's home, "was *not* the

murder weapon" (emphasis in original)).

For these reasons, the unfair prejudicial effect of the evidence, if any, was slight and did not substantially outweigh the probative value of the evidence showing that Appellant had access to a gun, which could have been the second gun used in the robbery. See OCGA § 24-4-403. Accordingly, trial counsel was not deficient for failing to move in limine to exclude the evidence. See *Williams v. State*, 315 Ga. 797, 806 (2) (884 SE2d 877) (2023) ("[F]ailing to file a meritless motion is not deficient performance.").

6. Finally, Appellant claims that he suffered prejudice from cumulative error. Under *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020), "we must consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel." *Jackson*, 317 Ga. at 106-107 (4) (citation and punctuation omitted). To establish cumulative error, Appellant must show that at least two errors were committed throughout the course of the trial and that, "considered together along with the entire record, the multiple errors so infected the jury's deliberation

33

that they denied [the appellant] a fundamentally fair trial." Id. at 107 (4).

Here, we have pretermitted two trial court errors: that the trial court erred in failing to charge the jury on accomplice corroboration and that the trial court abused its discretion in admitting gang evidence. Moreover, we have assumed one instance of ineffective assistance of counsel: that trial counsel was deficient in failing to request an accomplice-corroboration instruction. The harms suffered from counsel's failure to request an accomplice-corroboration instruction and from the trial court's failure to give one were identical and minimal. See *Zayas v. State*, 319 Ga. 402, 414 (4) (902 SE2d 583) (2024). These harms were minimal because White's testimony was corroborated by some of the most incriminating evidence presented at trial: Whitley's testimony that Appellant admitted to killing someone and Thomas's identification of Appellant in a lineup. Likewise, the harm from the admission of the gang-related evidence was minimal because the prosecution introduced no evidence of Appellant's gang membership other than

the testimony of a witness who clarified that the "gang" was actually a rap organization.

Considering these presumed errors together, and "assuming without deciding that the evidentiary error and the instructional error c[an] be aggregated for cumulative-error review,"[5] we conclude that Appellant cannot show prejudice warranting a new trial. *Jackson*, 317 Ga. at 107 (4). Moreover, these combined assumed errors did not cause prejudice given the strong evidence of Appellant's guilt. Accordingly, Appellant's claim fails. See *Jackson*, 317 Ga. at 104 (2) (b), 106-107 (4) (concluding that the appellant failed to establish cumulative prejudice when the Court (1) assumed deficiency for trial counsel's failure to "stipulate to [the appellant's] status as a convicted felon" (2) assumed deficiency for trial court's failure to request an accomplice-corroboration instruction and (3)

---

[5] As we have explained, *Lane* involved only evidentiary issues, which usually are easily cumulated. We made explicit in *Lane* that some other types of error may not allow aggregation by their nature, but that question is not presented here.

*Jackson*, 317 Ga. at 107 (4) n.7 (citations and punctuation omitted).

assumed error related to the trial court's failure to give an accomplice-corroboration instruction and when "[t]he evidence against [the appellant] was strong").

*Judgment affirmed. Peterson, C. J., Warren, P. J., and Bethel, Ellington, McMillian, LaGrua, and Pinson, JJ., concur.*

Decided June 10, 2025.

Murder. Fulton Superior Court. Before Judge Adams.

*Matthew K. Winchester*, for appellant.

*Fani T. Willis, District Attorney, Kevin C. Armstrong, Ruth M. Pawlak, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Senior Assistant Attorney General, Stephany J. Luttrell, Assistant Attorney General*, for appellee.